UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN SEYMOUR,

        Plaintiff,

   v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

        Defendant.

CASE NO. C17-5849-JCC-BAT

**REPORT AND RECOMMENDATION**

Brian Seymour seeks review of the denial of his Disability Insurance Benefits application. He contends the ALJ erred by rejecting the treating psychiatrist's opinion, rejecting the examining optometrist's opinion and finding cataracts to be non-severe, forming an RFC finding not supported by substantial evidence, and relying on contradictory, inconsistent vocational testimony. Dkt. 10. The court recommends the case be **REVERSED** and **REMANDED** for an award of benefits.

## BACKGROUND

Mr. Seymour is currently 39 years old, has a high school education, and has worked as a boatswain and sales attendant. Tr. 33, 307, 903-04. In October 2012, he applied for benefits, alleging disability as of January 1, 2009. Tr. 20. In June 2014, the Commissioner issued a decision finding him not disabled. Tr. 20-34. This court, in a decision dated September 20, 2016,

REPORT AND RECOMMENDATION - 1

reversed and remanded the Commissioner's decision for further administrative proceedings. Tr. 943-63. Upon remand, the ALJ conducted another hearing and, on June 21, 2017, issued a second decision finding Mr. Seymour not disabled. Tr. 843-55. Mr. Seymour now seeks review of that decision.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. Seymour had not engaged in substantial gainful activity since the alleged onset date; that he had the following severe impairments: diabetes mellitus, lumbar degenerative disc disease, PTSD, depressive disorder, and history of ADHD; and that these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 846. The ALJ found that Mr. Seymour had the residual functional capacity to perform less than the full range of light work, with limitations on his ability to stand and perform certain postural activities; he could engage in unskilled, repetitive, routine tasks in two-hour increments; he could have no contact with the public; he could work in proximity to but not in coordination with co-workers; he could have occasional contact with supervisors; he would be off-task at work up to 10% of the time but still meeting the minimum production requirements of the job; he would be absent from work up to 9 times per year; and he could have no extreme loud noise in the workplace. Tr. 848. The ALJ found that Mr. Seymour could not perform his past work, but there are jobs that exist in significant numbers in the national economy that he could perform. Tr. 853-54. The ALJ therefore found Mr. Seymour not disabled. Tr. 855.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

# DISCUSSION

### A.   Dr. Engstrom's opinion

Mr. Seymour argues that the ALJ failed to give valid reasons for rejecting the opinion of treating psychologist, Mark Engstrom, Ph.D., even though the ALJ's previous error in this regard was one of the reasons this court reversed the prior decision. Dkt. 10 at 4. The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

Dr. Engstrom opined in July 2013 that Mr. Seymour had marked limitations in concentration, persistence, and pace, social functioning, and activities of daily living; he had moderate to marked limitations in specific activities. Tr. 660-61. He opined that Mr. Seymour would have limited ability to cope with workplace stress, and would need to take unscheduled breaks and miss more than two days of work per month due to his mental health symptoms. Tr. 662.

In the June 2014 decision, the ALJ gave Dr. Engstrom's opinion limited weight, finding that the degree of limitation Dr. Engstrom opined was not entirely supported by the record. Tr. 30. This court, in its previous decision, found that the ALJ's assessment of Dr. Engstrom's opinion was incomplete because it cited to only one record, a report prepared by a social worker who saw Mr. Engstrom after he became disruptive at a VA office, whereas Dr. Engstrom had been Mr. Seymour's treating psychologist for three years and his numerous treatment notes provided an important longitudinal view of Mr. Seymour that the ALJ did not account for. Tr. 954-56.

1	In the June 2017 decision, the ALJ gave Dr. Engstrom's opinion only some weight. Tr. 851. The ALJ found that it did not appear that Dr. Engstrom was aware of many facets of Mr. Seymour's self-reported activities, which required levels of functioning that contradicted the severity Dr. Engstrom opined. *Id.* The ALJ noted as examples Mr. Seymour's reports about his parenting responsibilities, including being the primary caregiver of his two children while his wife was at work, his testimony that he has a good relationship with his father and had one friend who visits his house quite often, and the fact that he drives his sons to soccer practices and games each week. *Id.* None of these reasons is valid.

The ALJ found that Dr. Engstrom did not appear to be aware of Mr. Seymour's parenting responsibilities. Tr. 851. But Dr. Engstrom opined that Mr. Seymour had "considerable difficulty coping with day to day stressors, including the understandable challenge of supporting himself + his family." Tr. 661. There is no reason to think Dr. Engstrom, who was involved with providing individual and group therapy to Mr. Seymour for three years, was unaware of Mr. Seymour's family responsibilities. Nor does the ALJ explain how Mr. Seymour's ability to care for his school-aged children, including driving them to soccer practices and games, undermine Dr. Engstrom's opinions about his functional limitations.

The ALJ also found Mr. Seymour's testimony that he had a good relationship with his father and had one friend inconsistent with Dr. Engstrom's opinion about marked social limitations. Tr. 851. The fact that Mr. Seymour has two good relationships is not inconsistent with Dr. Engstrom's opinion. Dr. Engstrom opined that Mr. Seymour is hypervigilant and wary of trusting others, and that his emotional and behavior dysregulation can lead to "dramatic/intense interactions with others." Tr. 661. The record is replete with examples of the type of "dramatic/intense interactions" that Dr. Engstrom described. For example, Mr. Seymour

REPORT AND RECOMMENDATION - 4

was once so disruptive in a congressman's office that staff called in a mental health professional to assess him. Tr. 49-50. Similar events have occurred at other public locations and within his family. Tr. 891 (pulled knife on supervisor), 898 (wife has called police on him multiple times). Even considering the two good relationships the ALJ identifies, the record supports, rather than undermines, Dr. Engstrom's opinion about Mr. Seymour's social interactions.

The ALJ also found that Mr. Seymour's admitted non-compliance with diabetes treatment had a direct bearing on Dr. Engstrom's treatment relationship with him, in that non-compliance "suggests behavioral modifications within the claimant's control could have increased his functioning." Tr. 851. With this finding, the ALJ is essentially imposing his adverse credibility determination onto Mr. Seymour's treatment relationship with Dr. Engstrom without any basis for this in Dr. Engstrom's opinion or treatment notes. An ALJ may not reject a treating doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Dr. Engstrom raised no concerns about untruthfulness or "behavioral modification" within Mr. Seymour's control, and he supported his opinion with his own observations based on more than three years of treatment. The ALJ may not manufacture concerns about purposeful "behavioral modifications" in Mr. Seymour's treatment relationship with Dr. Engstrom in order to reject the doctor's opinion. This was not a valid reason to reject the opinion.

In sum, the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, to reject Dr. Engstrom's opinion.

**B.    Dr. Sorenson's opinion and cataracts as a severe impairment**

Mr. Seymour argues that the ALJ erred in rejecting the opinion of ophthalmologist Kenton Sorenson, M.D., and in finding his cataracts to be not severe. Dkt. 10 at 8. At step two, a claimant must make a threshold showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). An impairment can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The step-two inquiry has been characterized as "a *de minimis* screening device to dispose of groundless claims." *Id.*

Dr. Sorenson examined Mr. Seymour in September 2013 and found that Mr. Seymour had cataracts in both eyes and they were functionally significant. Tr. 663. He opined that Mr. Seymour would likely benefit from cataract extraction in both eyes as this accounted for most of his visual symptoms. *Id.* He opined that Mr. Seymour was able to avoid ordinary hazards in the workplace, read ordinary print with corrective glasses, and view a computer screen, but was unable to read very small print. Tr. 669. He opined that Mr. Seymour may have trouble with visually demanding tasks. Tr. 671.

In the June 2014 decision, the ALJ found cataracts to be a severe impairment at step two and included a limitation in the residual functional capacity finding that Mr. Seymour could not read small print, i.e., 10 point type or smaller. Tr. 22, 27. In evaluating Dr. Sorenson's opinion, the ALJ found that Dr. Sorenson's assessment was consistent with his objective examination findings and therefore gave it great weight. Tr. 29.

In the June 2017 decision, the ALJ found at step two that cataracts were not a severe impairment based on Mr. Seymour's reports that he continued to drive, an activity that the ALJ found requires at least adequate vision and Mr. Seymour undertook regularly. Tr. 846. In evaluating Dr. Sorenson's opinion as part of the residual functional capacity analysis, the ALJ found that Mr. Seymour's driving activity indicated at least adequate vision despite the alleged limitations and therefore gave Dr. Sorenson's opinion only some weight. Tr. 852.

The ALJ's finding that Mr. Seymour's cataracts are not severe ignores Dr. Sorenson's opinion that cataracts are functionally significant and affect his ability to read fine print and perform visually demanding tasks. Dr. Sorenson's opinion is, as the ALJ found in the first decision, enough to satisfy the low bar of the step-two inquiry. The ALJ therefore erred in finding cataracts to be non-severe.

Where an ALJ errs in finding an impairment to be non-severe, the error is harmless if the ALJ properly considered the limitations caused by the impairment at the later steps. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ considered Dr. Sorenson's opinion in evaluating Mr. Seymour's residual functional capacity, but gave it only limited weight and included no visual limitations in the RFC finding. Tr. 852. The sole reason he gave for rejecting Dr. Sorenson's opinion was Mr. Seymour's testimony about his continued driving activity, which the ALJ found indicated at least adequate vision. *Id.*

An ALJ can reject an opinion that is inconsistent with other evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). But as Dr. Sorenson did not opine about any driving limitations, Mr. Sorenson's continued driving activity was not inconsistent with the doctor's opinion and thus not a valid basis for rejecting the opinion. Notably, the ALJ accepted Dr. Sorenson's opinion in the first decision, despite the fact that Mr. Seymour also

REPORT AND RECOMMENDATION - 7

testified at that hearing that he drove. Tr. 44-45. The ALJ does not give any reason for the different finding in the later decision. Because the ALJ did not take into account any functional limitations caused by Mr. Sorenson's cataracts and did not properly reject the evidence of those limitations, the error in finding cataracts non-severe was not harmless.

### C.     Time off task

Mr. Seymour argues that the ALJ failed to adequately explain the basis for the finding that he would be off task at work up to 10% of the time. Dkt. 10 at 9.

In the June 2013 decision, the ALJ found that Mr. Seymour would be off task for up to 14% of the time. Tr. 27. This court found that the ALJ failed to provide an explanation or cite to record evidence to specifically support this finding and that, lacking such support, the finding appeared result-oriented. Tr. 957-58. In the June 2017 decision, the ALJ found that Mr. Seymour would be off-task at work for up to 10% of the time but still meeting the minimum production requirements of the job. Tr. 848. The ALJ based this finding on "evidence showing that the claimant's concentration and attention are seriously compromised." Tr. 851. The ALJ found that the percentage is a "reasonable estimate of the time that claimant could be non-attentive to tasks in which he is engaged," that Mr. Seymour's self-reported activities supported the limitation, and that a greater limitation was not supported by the record. *Id.*

Mr. Seymour argues that the ALJ again failed to provide a valid explanation for the finding of time off-task, instead simply giving a slightly different number that is still result-oriented. Dkt. 10 at 18. The court agrees. Instead of citing to specific evidence to support this finding, as the court directed in its previous decision, the ALJ referred generally to Mr. Seymour's daily activities without any explanation as to how these activities are linked to his ability to maintain concentration during a workday or how they lead to a finding of being off task

REPORT AND RECOMMENDATION - 8

1 for 10% of the time. The ALJ's general statement referring to daily activities failed to correct the

2 error this court previously identified. The RFC finding remains, in this respect, lacking adequate

3 explanation to show that it is supported by substantial evidence and free of legal error.

### D.   Vocational expert testimony

Finally, Mr. Seymour argues that the vocational expert gave inconsistent testimony as to the impact of missed time and time off task. Dkt. 10 at 10-11. The VE testified that a person who is off task for 10% of the time and who will miss 9 days of work per year would be able to maintain competitive employment. Tr. 904-05. The VE also testified that a person who missed more than two days of work per month would be unable to maintain competitive employment. Tr. 909. Mr. Seymour argues that adding together the time off task of 10%—which adds up to 4 hours per week or 26 8-hour workdays over the course of a year—with 9 additional missed days per year equals 35 missed work days per year, which is more than two work days per month and, per the VE's testimony, incompatible with maintaining competitive employment. Dkt. 10 at 11.

The court is not persuaded by Mr. Seymour's attempt to conflate the VE's testimony about time off task and missed workdays. Absent testimony from the VE that time off task and missed days of work should be computed in the manner Mr. Seymour proposes, the court declines to impose such an interpretation on the vocational evidence. The court declines to find an error based on this argument.

### E.   Remand for further proceedings

Mr. Seymour asks the court to apply the credit-as-true doctrine to Dr. Sorenson's opinion and remand this case for an immediate award of benefits. Dkt. 10 at 8, 11-12. The Court may remand for an award of benefits where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide

REPORT AND RECOMMENDATION - 9

legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Courts have flexibility in applying this rule, and may instead remand for further proceedings where the record as a whole "creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

The Court finds that the conditions for an award of benefits are met. First, there is no indication that further development of the record is needed. The date last insured, December 31, 2013, has long since passed and, after two administrative hearings, the court finds that there would be no useful purpose in a third hearing. Second, the ALJ failed, for the second time, to provide legally sufficient reasons for rejecting Dr. Engstrom's opinion. The ALJ also failed in the most recent decision to provide legally sufficient reasons for rejecting Dr. Sorenson's opinion. And third, the court finds that if Dr. Engstrom's opinion were credited as true, the ALJ would be required to find Mr. Seymour disabled on remand. In addition to the numerous moderate and marked limitations Dr. Engstrom opined, he also opined that Mr. Seymour would miss 16 hours of work per month because of his impairments. Tr. 662. The VE testified that a person who missed that much work would be unable to maintain competitive employment. Tr. 909. Finally, the court finds no reason to exercise flexibility in applying the credit-as-true rule, as a review of the record as a whole does not create serious doubt that Mr. Seymour was disabled. The court therefore recommends that the Commissioner's decision be reversed and this case remanded for an award of benefits.

## CONCLUSION

For the foregoing reasons, the court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for an award of benefits.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **June 28, 2018**. If no objections are filed, the Clerk shall note the matter as ready for the court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 14th day of June, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 11